IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JACKSON HASZ,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>NATIONAL COLLEGIATE ATHLETIC ASSOCIATION,<br><br>　　　　　Defendant. | 8:25CV398<br><br>**MEMORANDUM AND ORDER** |

This matter comes before the Court on Plaintiff's motion for a preliminary injunction, Filing No. 5. Plaintiff seeks an order enjoining Defendant from enforcing its so-called Five-Year Rule which prevents him from playing collegiate football for the 2025–26 season. Hasz contends the Five-Year Rule violates Section 1 of the Sherman Act. For the reasons set forth herein, the Court denies the motion.

**I.    BACKGROUND**

Plaintiff, Jackson Hasz, is a college athlete. Filing No. 7-1 at 1. After playing collegiate-level football for a number of years, Hasz now seeks to continue to play in the upcoming 2025–26 season. Defendant, the National Collegiate Athletic Association is a voluntary, self-governing association of collegiate member schools which has formulated various rules governing college athletics. Filing No. 20-1 at 2. The NCAA has determined Hasz is ineligible to play football for the 2025–26 season because he has exceeded his five-year period of eligibility for collegiate competition.

The so-called Five-Year Rule limits student athletes to four seasons of competition within a five-year period of eligibility. The five-year period commences when a student

1

enrolls in any institution of higher education, including NCAA member schools and non-member schools such as junior colleges. It provides as follows:

> **12.8 Seasons of Competition: Five-Year Rule**. A student-athlete shall not engage in more than four seasons of intercollegiate competition in any one sport (see Bylaws 12.02.6 and 14.3.3). An institution shall not permit a student-athlete to represent it in intercollegiate competition unless the individual completes all seasons of participation in all sports within the time periods specified below: (Revised: 7/31/14)
>
> **12.8.1 Five-Year Rule.** A student-athlete shall complete the student-athlete's seasons of participation within five calendar years from the beginning of the semester or quarter in which the student-athlete first registered for a minimum full-time program of studies in a collegiate institution, with time spent in the armed services, on official religious missions or with recognized foreign aid services of the U.S. government being excepted. For international students, service in the armed forces or on an official religious mission of the student's home country is considered equivalent to such service in the United States. (Revised: 4/2/10, 7/31/14)
>
> **12.8.1.1 Determining the Start of the Five-Year Period**. For purposes of starting the count of time under the five-year rule, a student-athlete shall be considered registered at a collegiate institution (domestic or foreign; see Bylaw 14.02.4) when the student-athlete initially registers in a regular term (semester or quarter) of an academic year for a minimum fulltime program of studies, as determined by the institution, and attends the student's first day of classes for that term (see Bylaw 12.8.2). (Revised: 7/31/14)

Filing No. 20-2 at 67.

Plaintiff Hasz graduated from Creighton Preparatory High School in Omaha, Nebraska, in 2019. Filing No. 7-1 at 1. In August 2019, he enrolled at Iowa Western Community College, a non-NCAA junior college ("JUCO"). *Id.* At IWCC, he participated in the football program but did not play in any games, thus making it a "redshirt" season for him. *Id.* In 2020, Hasz re-enrolled at IWCC and participated on the football team, playing in eight total games during the season, which was postponed to spring 2021 due to the COVID-19 pandemic. *Id.* at 1–2. The NCAA granted players a blanket waiver for the 2020–21 season due to COVID-19, meaning that season did not count towards Hasz's

four years of play.  Filing No. 20-1 at 5–6.  For the 2021–22 season, Hasz was accepted to play football at the University of Buffalo, an NCAA Division I school.  Filing No. 7-1 at 2.  He played in four games that season.  Id.  Hasz returned to Buffalo for the 2022–23 season and played in twelve games.  Id.  For the 2023–24 season, Hasz transferred to UNLV, another NCAA Division I school, where he played in fourteen football games.  Id.  For the 2024–25 season, Hasz returned to UNLV and played in fourteen games.  Id.

Hasz sought to play football for UNLV again for the 2025–26 season but was precluded by the Five-Year Rule.  In April 2025, UNLV filed a waiver request on Hasz's behalf seeking to have the NCAA permit him an additional year of eligibility to play football for the 2025–26 season.  Id.  The NCAA denied the waiver application on May 8, 2025, and Hasz filed suit thereafter.  Id.; Filing No. 20-1 at 7–8.  He argues that, if his Five-Year Clock did not begin to run until he transferred from a JUCO to Buffalo for the 2021–22 season, then 2021–22 would count as his redshirt season (as opposed to the 2019–20 season when he played at IWCC) and he would be eligible to play in the 2025–26 season as it would be his fourth year of competition within the five-year eligibility window.  By contrast, as the rule currently stands, the five-year clock began to run in 2019 when Hasz first enrolled at IWCC, and he is thus beyond the eligibility window and precluded from playing in the 2025–26 season.  He alleges the Five-Year Rule's inclusion of JUCO time is an unlawful restraint of trade.  Filing No. 1 at 24–25.[1]  He has moved for a preliminary

---

[1] Hasz also asserts a claim for breach of contract.  Filing No. 1 at 25.  He alleges UNLV has a contract with the NCAA of which he is a third-party beneficiary.  He argues the NCAA's enforcement of the Five-Year Rule breaches its contractual obligation to enforce its rules and regulations fairly and consistently.  This argument is premised on the Five-Year Rule being anticompetitive.  Thus, to the extent the Court concludes below that Hasz has not met his burden to show a likelihood of success on his antitrust claim, his contractual claim likewise fails to carry the necessary weight for purposes of a preliminary injunction.  Perhaps recognizing that the contractual claim is derivative of the antitrust claim, the parties also do not address it in the briefing related to the preliminary injunction.  Thus, the Court need not further discuss it for purposes of the present motion.

3

injunction to prevent the NCAA from enforcing the Five-Year Rule against him and precluding him from playing in the upcoming football season.

## II. ANALYSIS

Hasz argues that his time spent playing at a junior college should not count against his NCAA eligibility. He argues the Five-Year Rule which requires the clock to start when a student–athlete enrolls at any institution of higher learning, not just an NCAA member school, constitutes an unlawful restraint of trade. He argues a preliminary injunction is warranted because the football season is soon to commence, and his exclusion will cause him irreparable harm. By contrast, the NCAA contends its eligibility rules are not subject to antitrust scrutiny but rather are valid methods of ensuring only bona fide college students participate in collegiate athletics. It argues there is no basis to enjoin its enforcement of the Five-Year Rule.

### A. Standard of Review

Federal Rule of Civil Procedure 65 governs the issuance of preliminary injunctive relief. In deciding whether to issue a preliminary injunction, the Court considers: "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc).

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). A court must be "mindful that a movant carries a 'heavier' burden when granting a preliminary injunction has the effect of awarding the movant substantially the relief it could obtain after a trial on the

merits." *H&R Block, Inc. v. Block, Inc.*, 58 F.4th 939, 946 (8th Cir. 2023) (quoting *Calvin Klein Cosms. Corp. v. Lenox Lab'ys, Inc.*, 815 F.2d 500, 503 (8th Cir. 1987)).

### B. Likelihood of Success on the Merits

The Court starts with the "most important" factor—Hasz's likelihood of success on the merits. *Roudachevski v. All-Am. Care Centers, Inc.*, 648 F.3d 701, 706 (8th Cir. 2011). In this posture, Hasz "must show that he has at least a 'fair chance of prevailing.'" *Miller v. Honkamp Krueger Fin. Servs., Inc.*, 9 F.4th 1011, 1014 (8th Cir. 2021) (quoting *Kroupa v. Nielsen*, 731 F.3d 813, 818 (8th Cir. 2013)).

#### 1. The Five-Year Rule Is Not Subject to the Sherman Act

Hasz argues that the U.S. Supreme Court's decision in *National Collegiate Athletic Association v. Alston*, 594 U.S. 69 (2021), means all of the NCAA's bylaws, including the Five-Year Rule, are subject to antitrust scrutiny. Under the Section 1 of the Sherman Act, "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is hereby declared to be illegal." 15 U.S.C. § 1. The Court has long held that "restraint of trade" means "undue restraint." *Alston*, 594 U.S. at 81; *see Nat'l Collegiate Athletic Ass'n v. Bd. of Regents of Univ. of Okla.*, 468 U.S. 85, 98 (1984) ("[A]s we have repeatedly recognized, the Sherman Act was intended to prohibit only unreasonable restraints of trade.").

In *Alston*, the Supreme Court held that the NCAA violated the Sherman Act by restricting the education-related benefits student–athletes could receive, such as scholarships and compensation related to athletic performance. 594 U.S. at 73, 107 (Kavanaugh, J., concurring). It found that the NCAA had near-complete dominance of the market for college sports and that its rules imposing compensation limits on student

5

athletes produced significant anticompetitive effects in this market.  *See id.* at 81–82.  Accordingly, it affirmed the lower court's order which "enjoined the NCAA only from limiting education-related compensation or benefits that conferences and schools may provide to student-athletes." *Id.* at 85.

Hasz argues *Alston* stands for the proposition that all of the NCAA's rules are subject to scrutiny under Section 1 of the Sherman Act.  But, as another court confronting this issue has noted, "*Alston* is more scalpel than ax."  *Goldstein v. Nat'l Collegiate Athletic Ass'n*, No. 3:25-CV-00027-TES, 2025 WL 662809, at *4 (M.D. Ga. Feb. 28, 2025).  That is, the Supreme Court was clear in *Alston* that its decision concerned "only a narrow subset of the NCAA's *compensation* rules—namely, the rules restricting the education-related benefits that student athletes may receive." 594 U.S. at 108 (Kavanaugh, J., concurring) (emphasis added).  By contrast, Hasz takes issue with the Five-Year Rule, an NCAA bylaw that addresses eligibility, not student compensation.

Neither the U.S. Supreme Court nor the Eighth Circuit Court of Appeals has had occasion to address whether NCAA bylaws apart from the education-related compensation rules at issue in *Alston* are subject to antitrust scrutiny.  The various lower courts that have confronted the issue have reached differing conclusions. *Compare Pavia v. Nat'l Collegiate Athletic Ass'n*, 760 F. Supp. 3d 527, 537 (M.D. Tenn. 2024) (holding that post-*Alston*, "it necessarily follows that restrictions on who is eligible to play and therefore to negotiate NIL agreements is also commercial in nature," and enjoining the NCAA from enforcing its eligibility rules to preclude a former JUCO player from playing an additional season of Division I football); *and Ohio v. Nat'l Collegiate Athletic Ass'n*, 706 F. Supp. 3d 583, 602 (N.D.W. Va. 2023) (granting temporary restraining order preventing

6

the NCAA from enforcing its transfer eligibility rule which requires a student athlete to sit out for one season after transferring schools); *and Braham v. Nat'l Collegiate Athletic Ass'n*, Case No. 3:25cv253, Document 28, (D. Nev. July 18, 2025) (enjoining enforcement of, inter alia, the Five-Year Rule as applied to plaintiff's JUCO time because "[i]n the post-*Alston* collegiate athletic world, the challenged eligibility rules are so intertwined with commercial rules and benefits that they are, in essence, 'commercial' in nature"); *with Coley v. Nat'l Collegiate Athletic Ass'n*, No. 5:25-CV-98-D, 2025 WL 1616719, at *6 (E.D.N.C. June 6, 2025) (denying injunctive relief to student–athlete seeking to enjoin the NCAA from enforcing the Five-Year Rule because "*Alston* does not compel this court to conclude that the Sherman Act applies to the Challenged Bylaws simply because the Challenged Bylaws indirectly affect a student-athlete's ability to earn NIL compensation" and the Five-Year Rule is just such a "true eligibility rule[]"); *Brzovic v. Nat'l Collegiate Athletic Ass'n*, No. 2:25-CV-02885-DCN, 2025 WL 1370758, at *4 (D.S.C. May 11, 2025) (declining to enjoin enforcement of the Five-Year Rule because "[t]he text of the Five-Year Rule contains only regulations and guidance on student-athlete eligibility to participate in intercollegiate athletics—the text does not include any mention of business or commercial transactions"); *Johnson v. Nat'l Collegiate Athletic Ass'n*, No. CV 25-60-M-KLD, 2025 WL 1790345, at *10 (D. Mont. June 26, 2025) (denying injunctive relief to preclude enforcement of the Five-Year Rule "[b]ecause the Challenged Rules are true eligibility rules, they are not commercial in nature and are not subject to antitrust scrutiny under the Sherman Act"); *Goldstein v. Nat'l Collegiate Athletic Ass'n*, No. 3:25-CV-00027-TES, 2025 WL 662809, at *3 (M.D. Ga. Feb. 28, 2025) (same).

7

The Court agrees with those courts finding the Five-Year Rule is a true eligibility rule, not a commercial rule. By its text all it does is "limit[] the number of years that student-athletes may play collegiate sports." *Goldstein*, 2025 WL 662809, at *3 (alteration in original) (quoting *O'Bannon v. Nat'l Collegiate Athletic Ass'n*, 802 F.3d 1049, 1066 (9th Cir. 2015)). Although the Five-Year Rule has an incidental effect on Hasz's ability to earn NIL money by preventing him from playing an additional season, it does not directly regulate commercial activity. Rather, it dictates who can play college sports and for how long. *Accord Coley*, 2025 WL 1616719, at *6 ("Although the Challenged Bylaws prevent Coley from earning NIL compensation at NCSU by preventing him from playing an additional season, the Challenged Bylaws do not regulate commercial activity.") Importantly, there is no evidence in the present record demonstrating how the Five-Year Rule could be read as regulating compensation for student-athletes.

The distinction between the NCAA's compensation and eligibility rules is important because non-commercial behavior falls outside the scope of the Sherman Act. *See, e.g.*, *Apex Hosiery Co. v. Leader*, 310 U.S. 469, 493 (1940) ("The end sought [by enactment of the Sherman Act] was the prevention of restraints to free competition in business and commercial transactions which tended to restrict production, raise prices or otherwise control the market to the detriment of purchasers or consumers of goods and services, all of which had come to be regarded as a special form of public injury."); *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 432–33 (6th Cir. 2008); (finding the "NCAA's rules on recruiting student athletes, specifically those rules prohibiting improper inducements and academic fraud, are all explicitly non-commercial" and therefore not subject to the Sherman Act). Accordingly, because the only evidence before the Court leads it to

conclude the Five-Year Rule is a pure eligibility rule rather than a commercial rule,[2] it is not subject to antitrust scrutiny, and Hasz is unlikely to prevail on his antitrust claim.

Hasz relies on a case from the United States District Court for the District of New Jersey, *Elad v. National Collegiate Athletic Association*, No. CV 25-1981 (ZNQ) (JTQ), 2025 WL 1202014, at *1 (D.N.J. Apr. 25, 2025), but the more developed factual record in that case makes it distinguishable. Elad was a collegiate football player who sought to enjoin the NCAA's enforcement of its Five-Year Rule as it applied to his JUCO time. *Id.* at *1. In support of his motion for a preliminary injunction, he presented evidence from three witnesses, including the head coach of the Rutgers University football team and a professor with a Ph.D. in economics and a specialty in sports business, industrial organization, and labor economic. *Id.* at *2. The professor testified regarding the relevant labor market for college football and opined on how the JUCO rule reduced the level of competition for early college athlete talent, depressed the cost to NCAA member schools to acquire players, and forced college athletes to prematurely end their college careers thereby reducing competition in the market. *Id.* On this record, the District of New Jersey concluded Elad had met his burden to show a likelihood of success that the Five-Year Rule violated the Sherman Act. The court relied on the professor's testimony and the cross-examination of the NCAA's expert witness to conclude that the questioned rules were commercial in nature. *Id.* at *7.

---

[2] As an additional point, the NCAA points out that invaliding the Five-Year Rule will invite scrutiny of all its other eligibility rules, undercutting its ability to effectively regulate collegiate athletics and turning it into little more than another professional sports organization rather than one focused on academics. To the extent Hasz tries to cast this as a hysterical slippery slope argument and urges the Court to focus only on the Five-Year Rule as it applies to him, this undermines his argument that the rule is, in fact, commercial. Either the Five-Year Rule has larger market impacts which affect him, or it is harmful only in his specific, narrow situation, but Hasz cannot have it both ways.

Here, however, there is no evidence in the record to support Hasz's claim of unfair competition, only his own affidavit explaining the personal harm to him. Unlike the sports and economics experts who testified in *Elad*, there is no evidence by which the Court can conclude the Five-Year Rule is commercial in nature. This is not to say that Hasz might not be able to produce such evidence at a later stage of the case, but at the present time, the Court cannot say he has met his burden to show the Five-Year Rule falls within the scope of the Sherman Act.

2. *Hasz Has Also Failed to Demonstrate a Likelihood of Success Under the Rule of Reason Analysis*

Moreover, even if the Sherman Act were to apply to the Five-Year Rule, Hasz has not met his burden to establish it has a substantial anticompetitive effect. Under the applicable rule-of-reason analysis, the Court makes "a fact-specific assessment of market power and market structure to assess a challenged restraint's actual effect on competition." *Alston*, 594 U.S. at 81 (citation omitted). This analysis involves a three-step, burden-shifting framework in which Hasz "has the initial burden to prove that the challenged restraint has a substantial anticompetitive effect." *Id.* at 96. The NCAA then would have "to show a procompetitive rationale for the restraint." *Id.* Finally, the burden would shift back to Hasz "to demonstrate that the procompetitive efficiencies could be reasonably achieved through less anticompetitive means." *Id.* at 96–97.

Hasz would be unable to meet his initial burden to show the Five-Year Rule has a substantial anticompetitive effect because, before even reaching the question of what the relevant market may be, it is apparent Hasz has not alleged or demonstrated any form of antitrust injury. Rather than evidence of any harm to a specific market or to competition within a given market, Hasz's only evidence is of harm to himself (his inability to earn NIL

money from an additional season of play and the impact on his future ability to potentially play in the NFL). "Although the Challenged Rules undeniably affect [Hasz] because they render him ineligible to compete in another season of Division I [football], he has not shown that his ineligibility has any impact on the degree of competition between the pool of potentially eligible players." *Johnson v. Nat'l Collegiate Athletic Ass'n*, No. CV 25-60-M-KLD, 2025 WL 1790345, at *13 (D. Mont. June 26, 2025).

The parties advance contradictory arguments regarding what the effect *might* be of allowing former JUCO players like Hasz to compete for additional seasons. Hasz posits the change would increase competition by retaining more experienced players, thereby enhancing the caliber of play for consumers. By contrast, the NCAA argues abolishing the Five-Year Rule would result in an increased supply of student athletes, thereby reducing demand and decreasing competition among member schools. Either theory is potentially plausible, but on the current underdeveloped record, both remain just that: theories, based not on evidence before the Court, but on argument and speculation. Accordingly, the Court cannot say Hasz would meet his initial burden if it were to apply the rule of reason analysis.

C. **Irreparable Harm**

Even if Hasz were able to show a likelihood of success on the merits of his claims, which he cannot, the factor of irreparable harm also weighs against the issuance of injunctive relief.

"Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009). The Eighth Circuit

has recognized that the "[l]oss of intangible assets such as reputation and goodwill can constitute irreparable injury." *United Healthcare Ins. Co. v. AdvancePCS*, 316 F.3d 737, 741 (8th Cir. 2002) (citation omitted).

Hasz has not shown he is likely to suffer irreparable harm in the absence of an injunction. To the extent he alleges he will lose out on NIL deals, any such harm is compensable through an award of monetary damages. Hasz argues he will miss out on the opportunity to potentially play in the NFL which could harm his mental well-being, but because there is no evidence of Hasz being scouted for the NFL, this harm remains too speculative to warrant an injunction.

### D. Balance of Harms

The balance of harms slightly favors the NCAA. As set forth above, the harm Hasz may potentially suffer without a preliminary injunction is compensable by monetary damages. The NCAA argues it will be harmed by an injunction because an injunction would call into question the validity of all of its bylaws and invite further litigation from tens of thousands of student athletes across the country. The Court finds this harm to be somewhat overstated, given that various courts around the country have already ruled both in favor of and against the position the NCAA takes, meaning a ruling from this Court is unlikely to unleash a cascade of litigation that is not already in motion. However, the Court appreciates the necessity of a reasonable set of rules defining eligibility. Therefore, the balance of harms tips slightly against issuing the request preliminary injunction.

### E. Public Interest

Lastly, the Court considers whether a preliminary injunction would serve the public interest. Hasz's argument is tied to his antitrust cause of action for which the Court has

already determined he has failed to meet his burden: he argues the public's interest in protecting competition would be served by enjoining the NCAA's enforcement of the Five-Year Rule.  The NCAA argues a preliminary injunction would harm the public interest by impacting tens of thousands of student athletes.  As noted above, the NCAA's concern might be overstated due to the fact that this issue is already being litigated in various courts across the country.  Nevertheless, the Court agrees the public interest weighs against issuance of the preliminary injunction due to Hasz's failure to carry the weight on the merits of his antitrust claim.

### III.    CONCLUSION

Weighing the appropriate factors, the Court concludes issuance of a preliminary injunction is not warranted.  Hasz has not shown a likelihood of success on the merits because, on the record presently before it, the Court cannot conclude the Five-Year Rule of eligibility is subject to antitrust scrutiny under the Sherman Act.  The remaining factors also weigh against issuing the injunctive relief sought.  Accordingly,

IT IS ORDERED:

1. Plaintiff's motion for a preliminary injunction, Filing No. 5, is denied.

Dated this 24th day of July, 2025.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge